**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**WHITE PLAINS COURTHOUSE**

| | |
|---|---|
| Rosita English, individually and on behalf of all others similarly situated, | 7:22-cv-05105 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Danone North America Public Benefit Corporation, | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1. Danone North America Public Benefit Corporation ("Defendant") manufactures, markets, labels, and sells French vanilla coffee whitener identified as a coffee creamer and described as "Delightfully Creamy" under the International Delight brand ("Product").

**I. DAIRY PRODUCTS AND COFFEE**

2. Coffee drinkers often add dairy products to soften its naturally strong taste.

3. Google Dictionary defines cream as "the thick white or pale yellow fatty liquid which rises to the top when milk is left to stand."

4. Merriam-Webster defines cream as the "yellowish part of milk containing from 18 to about 40 percent butterfat."

5. The Britannica Dictionary defines cream as "the thick part of milk that rises to the top; the part of milk that contains fat."

6. Collins Dictionary defines cream as "a thick yellowish-white liquid taken from milk."

7. Dictionary.com defines cream as "the fatty part of milk, which rises to the surface when the liquid is allowed to stand unless homogenized."

8. The Food and Drug Administration ("FDA") and identical State regulations, define cream as "the liquid milk product high in fat separated from milk, [with] not less than 18 percent milkfat." 21 C.F.R. § 131.3(a).

9. Coffee cream – also called light cream – is a specialized dairy product made for whitening coffee, "which contains not less than 18 percent but less than 30 percent milkfat," with added sweeteners and/or flavorings. 21 C.F.R. § 131.155(a).

## II. NON-DAIRY COFFEE WHITENERS

10. Non-dairy coffee whiteners were introduced in the 1960s.

11. These products were careful to distinguish themselves from dairy cream, including coffee cream.

12. First, they were sold under the generic name, "coffee whiteners."

13. Second, they were stocked in the frozen food sections of grocery stores.

14. In contrast, coffee cream and other dairy products were sold in the refrigerated foods section in the dairy case.

15. Third, the front label of these coffee whiteners prominently disclosed they were not dairy products.

16. Their labels stated, "A Vegetable Product – Contains No Milk or Milk Fat," and "To Whiten and Enrich Coffee."

### III.     COFFEE CREAMER WITHOUT CREAM

17.     The Product is marketed as a "Coffee Creamer" and sold alongside dairy products such as coffee cream.



18.     The statement of identity in the lower right corner identifies it as a "Coffee Creamer," beneath a large seal stating, "Delightfully Creamy."

 

19.     The representations that the Product is a "Coffee Creamer" are misleading because

it lacks cream or dairy ingredients beyond a *de minimis* amount of sodium caseinate.

**INGREDIENTS:** WATER, SUGAR, PALM OIL, **CONTAINS 2% OR LESS OF:** SODIUM CASEINATE* (A MILK DERIVATIVE), DIPOTASSIUM PHOSPHATE, CARRAGEENAN, MONO AND DIGLYCERIDES, NATURAL & ARTIFICIAL FLAVORS, SODIUM STEAROYL LACTYLATE, SALT.

*SODIUM CASEINATE IS NOT A SOURCE OF LACTOSE.

CONTAINS A MILK DERIVATIVE.

20. In place of dairy cream, the Product substitutes water and palm oil, the first and third ingredients, to reduce costs.

21. Cream is known for its "creamy" taste because milkfat contains hundreds of lactones, aroma compounds which contribute to its taste.

22. The name "coffee creamer" is almost identical to "coffee cream," defined by the FDA as a dairy product.

23. Consumers value cream from dairy ingredients for its nutritive purposes

24. Research indicates fats in dairy ingredients do not increase the risk of cardiovascular disease or increase cholesterol, in contrast to vegetable oils.

25. Dairy ingredients also contains protein, calcium and vitamins A, D, E, and K, which are absent from refined vegetable oils like palm oil.

26. Consumers are misled to expect the presence of cream, from dairy ingredients.

27. Defendant makes other representations and omissions with respect to the Product which are false and misleading.

28. Reasonable consumers must and do rely on a company to honestly and lawfully market and describe the components, attributes, and features of a product, relative to itself and

other comparable products or alternatives.

29. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

30. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

31. Had Plaintiff known the truth, she would not have bought the Product or would have paid less for it.

32. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than no less than $3.39 for 32 FL OZ (946 mL), excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

## Jurisdiction and Venue

33. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

34. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

35. The Product has been sold at thousands of locations in the states covered by the classes Plaintiff seeks to represent, with the representations challenged here, for at least 10 years.

36. Plaintiff Rosita English is a citizen of New York.

37. Defendant Danone North America Public Benefit Corporation is a Delaware public benefit corporation with a principal place of business in White Plains, Westchester County, New York.

38. Plaintiff's citizenship of Texas is diverse from Defendant.

39. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen

40. The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold with the representations described here for several years, in thousands of locations, in the states covered by Plaintiff's proposed classes.

41. The Product is available to consumers from grocery stores, warehouse club stores, drug stores, convenience stores, big box stores, and online

42. Venue is in the White Plains Courthouse in this District because a substantial part of the events or omissions giving rise to these claims occurred in Westchester County, including the marketing and labeling decisions for the Product.

## Parties

43. Plaintiff Rosita English is a citizen of Fort Worth, Tarrant County, Texas.

44. Defendant Danone North America Public Benefit Corporation is a Delaware public benefit corporation liability company with a principal place of business in White Plains, New York, Westchester County.

45. Defendant's parent company is the global dairy conglomerate Danone S.A., a French corporation.

46. Defendant's registered agent in its state of incorporation is Corporate Creations Network Inc., 3411 Silverside Rd Tatnall Bldg Ste 104 Wilmington DE 19810.

47. Plaintiff purchased the Product at locations including Walmart, 8401 Anderson Blvd, Fort Worth, TX 76120, between June 1, 2022, and June 8, 2022, among other times.

48. Plaintiff believed and expected the Product contained cream, a dairy ingredient because that is what the representations and omissions said and implied, on the front label and/or

the absence of any reference or statement elsewhere on the Product.

49. Plaintiff relied on the words, terms coloring, descriptions, layout, placement, packaging, hang tags, and/or images on the Product, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

50. Plaintiff bought the Product at or exceeding the above-referenced price.

51. Plaintiff would not have purchased the Product if she knew the representations and omissions were false and misleading or would have paid less for it.

52. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, requirements, instructions, features, and/or components.

53. The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

## Class Allegations

54. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Texas Class:** All persons in the State of Texas who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Montana, Idaho, Alaska, Virginia, Kentucky, Kansas, Nebraska, North Dakota, Iowa, South Carolina, and Utah who purchased the Product during the statutes of limitations for each cause of action alleged.

55. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled

to damages.

56. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

57. Plaintiff is an adequate representative because her interests do not conflict with other members.

58. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

59. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

60. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

<u>Texas Business and Commerce Code §§ 17.41-17.63 and/or</u>
<u>New York General Business Law §§ 349 and 350</u>

61. Plaintiff incorporates by reference all preceding paragraphs.

62. Plaintiff believed the Product contained cream, understood as a dairy ingredient.

63. Defendant's false, misleading, and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

64. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

65. Plaintiff relied on the representations and omissions to believe the Product contained cream, understood as a dairy ingredient.

66. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts

(On Behalf of the Consumer Fraud Multi-State Class)

67. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

68. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

69. Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct.

70. As a result of Defendant's use of artifice, and unfair or deceptive acts or business practices, the members of the Consumer Fraud Multi-State Class sustained damages.

71. Defendant's conduct showed motive and a reckless disregard of the truth such that an award of punitive damages is appropriate.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose
and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

72. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that it contained cream, understood as a dairy ingredient.

73. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions distributed to resellers, and targeted digital advertising.

74. Defendant knew the product attributes that potential customers like Plaintiff were

seeking and developed its marketing and labeling to directly meet those needs and desires.

75. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant that it contained cream, understood as a dairy ingredient.

76. Defendant's representations affirmed and promised that the Product contained cream, understood as a dairy ingredient.

77. Defendant described the Product so Plaintiff believed it contained cream, understood as a dairy ingredient, which became part of the basis of the bargain that it would conform to its affirmations and promises.

78. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

79. This duty is based on Defendant's outsized role in the market for this type of Product, a trusted company known for its high-quality products.

80. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

81. Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers, and their employees.

82. Plaintiff hereby provides notice to Defendant that it breached the express and implied warranties associated with the Product.

83. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

84. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

85. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container or label, because it was marketed as if it contained cream, a dairy ingredient.

86. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected it contained cream, a dairy ingredient, and she relied on Defendant's skill and judgment to select or furnish such a suitable product.

87. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Fraud

88. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained cream, understood as a dairy ingredient.

89. Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity and deception, through statements and omissions.

90. Defendant knew of the issues described here yet did not address them.

91. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

## Unjust Enrichment

92. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Restitution and disgorgement for members of the class pursuant to the applicable laws;

3. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

4. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

5. Other and further relief as the Court deems just and proper.

Dated:   June 17, 2022

Respectfully submitted,

/s/Spencer Sheehan
Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 412
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com