UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
ROSITA ENGLISH, individually and on behalf   :
of all those similarly situated,                       :
                        Plaintiff,    :
v.                                        :
                                     :
DANONE NORTH AMERICA PUBLIC      :
BENEFIT CORPORATION,                 :
                  Defendant.    :
--------------------------------------------------------------x

**OPINION AND ORDER**

22 CV 5105 (VB)

Briccetti, J.:

      Plaintiff Rosita English brings this putative class action against defendant Danone North America Public Benefit Corporation alleging violations of Sections 349 and 350 of New York's General Business Law ("GBL"); violations of Sections 17.41 through 17.63 of the Texas Business and Commerce Code ("DTPA"); violations of the consumer fraud acts of Alaska, Idaho, Iowa, Kansas, Kentucky, Montana, Nebraska, North Dakota, South Carolina, Utah, and Virginia; breach of express warranty; breach of the implied warranty of merchantability; breach of the implied warranty of fitness for a particular purpose; violation of the Magnuson Moss Warranty Act ("MMWA"); fraud; and unjust enrichment, all based on the assertion that defendant misrepresents its International Delight brand French Vanilla coffee whitener as a "coffee creamer" even though it does not contain cream. (Doc. #1 ("Compl.") ¶ 1).

      Now pending is defendant's motion to dismiss pursuant to Rule 12(b)(6). (Doc. #6).

      For the reasons set forth below, the motion is GRANTED.

      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d).

**BACKGROUND**

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences in plaintiff's favor, as summarized below.

This case concerns statements made on the packaging of International Delight French Vanilla flavored coffee whitener (the "Product"), manufactured by defendant, which has a principal place of business in New York. Plaintiff, a citizen of Texas,[1] allegedly purchased the Product in June 2022 in Fort Worth, Texas. Plaintiff alleges the Product is sold next to dairy products such as coffee cream. Further, the Product's front packaging identifies it as a "'Coffee Creamer,' beneath a large seal stating, 'Delightfully Creamy,'" as depicted below:



---

[1]     Drawing all reasonable inferences in plaintiff's favor, the Court construes plaintiff to allege she is a Texas citizen. Although in one paragraph plaintiff alleges she is "a citizen of New York" (Compl. ¶ 36), this is belied by her other allegations that "[p]laintiff's citizenship of Texas is diverse from [d]efendant," which resides in Delaware and New York (id. ¶ 38), and "[p]laintiff Rosita English is a citizen of Forth Worth, Tarrant County, Texas." (Id. ¶ 43).

(Compl. ¶¶ 17–18).

According to plaintiff, marketing the Product as a coffee creamer misleads consumers into believing the Product contains cream from dairy ingredients.  In particular, plaintiff alleges the "name 'coffee creamer' is almost identical to 'coffee cream'" (Compl. ¶ 22), which the U.S. Food and Drug Administration ("FDA") defines as a specialized dairy product "'contain[ing] not less than 18 percent but less than 30 percent milkfat,' with added sweeteners and/or flavorings." (Id. ¶¶ 8–9 (quoting 21 C.F.R. § 131.55(a)).  But unlike coffee cream, defendant's coffee creamer purportedly contains no cream or dairy ingredients, except for "a de minimis amount of sodium caseinate."  (Id. ¶ 19).[2]  Defendant allegedly uses water and palm oil in the Product instead of dairy cream to lower costs.

In addition, plaintiff contends reasonable consumers rely on companies "to honestly and lawfully market and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives."  (Compl. ¶ 28).

Further, plaintiff claims dairy has benefits that the Product lacks.  For example, dairy ingredients "contain[] protein, calcium and vitamins A, D, E, and K, which are absent from refined vegetable oils like palm oil" (Compl. ¶ 25), and research purportedly indicates "fats in dairy ingredients do not increase the risk of cardiovascular disease or increase cholesterol, in contrast to vegetable oils."  (Id. ¶ 24).  Therefore, plaintiff alleges she would not have purchased

---

[2]     According to plaintiff, the Product's Ingredients are listed as follows:  "WATER, SUGAR, PALM OIL, **CONTAINS 2% OR LESS OF:**  SODIUM CASEINATE* (A MILK DERIVATIVE), DIPOTASSIUM PHOSPHATE, CARRAGEENAN, MONO AND DIGLYCERIDES, NATURAL & ARTIFICIAL FLAVORS, SODIUM STEAROYL LACTYLATE, SALT.  *SODIUM CASEINATE IS NOT A SOURCE OF LACTOSE. CONTAINS A MILK DERIVATIVE."  (Compl. ¶ 19).

the Product if she had known it lacked dairy cream, or would have paid much less for it, and that the Product is actually worth "materially less" than defendant represented.  (Id. ¶ 29).

**DISCUSSION**

I.    Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).[3]  First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and thus are not sufficient to withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

---

[3]      Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

II.    New York GBL Claims

Defendant argues plaintiff fails plausibly to allege GBL claims because plaintiff

purchased the Product in Texas.

The Court agrees.

GBL Section 349 prohibits "deceptive acts or practices in the conduct of any business,

trade, or commerce . . . in this state."  N.Y. Gen. Bus. Law § 349(a).  Likewise, GBL Section 350

prohibits "[f]alse advertising in the conduct of any business, trade, or commerce, or in the

furnishing of any service in this state."  Id. § 350.  To state a claim under either section, "[t]he

transaction in which the consumer is deceived must occur in New York."  Goshen v. Mut. Life

Ins. Co. of N.Y., 98 N.Y.2d 314, 324 (2002); see also Cruz v. FXDirectDealer, LLC, 720 F.3d

115, 122 (2d Cir. 2013).  This test "does not turn on the residency of the parties," or on where the

defendant allegedly "hatch[ed] a scheme" to deceive consumers.  Goshen v. Mut. Life Ins. Co. of

N.Y., 98 N.Y.2d at 324–25.  Instead, the analysis focuses on whether the allegedly deceptive

transaction occurred in New York.  Id. at 325 ("[The GBL] was not intended to police the out-of-

state transactions of New York companies.").  This territoriality requirement "must be pleaded in

order for a claim brought under" GBL Sections 349 and 350 to survive.  Miramontes v. Ralph

Lauren Corp., 2023 WL 3293424, at *4 (S.D.N.Y. May 5, 2023) (citing MacNaughton v. Young

Living Essential Oils, LC, 67 F.4th 89, 99 (2d Cir. 2023)).

Plaintiff is a Texas citizen who purchased the Product in Texas.  Thus, the purportedly

deceptive transaction occurred in Texas, notwithstanding that defendant's principal place of

business is in New York, "which is irrelevant when deciding whether [p]laintiff's purchase of

[the Product] is a transaction protected by the GBL."  See Miramontes v. Ralph Lauren Corp.,

2023 WL 3293424, at *5 ("In this case, the Plaintiff was deceived in Texas, not New York—no

5

matter where Defendant's marketing team decided what to put on the labels . . . .  As <u>Goshen</u> plainly holds, that allegation[] does not satisfy the territoriality requirements of the GBL's consumer protection laws.").  "[T]he purchase of an allegedly mislabeled item in Texas by a Texan is not actionable under a law that was passed to protect New York consumers engaged in New York transactions." <u>Id.</u> at *1.  Because plaintiff does not allege she was deceived in New York, she cannot state a claim under GBL Sections 349 or 350.  <u>See</u> <u>Goshen v. Mut. Life Ins.</u> <u>Co. of N.Y.</u>, 98 N.Y.2d at 324–25.

Accordingly, plaintiff's GBL claims must be dismissed.

III.    <u>Texas DTPA Claims</u>

Defendant argues plaintiff fails plausibly to allege a DTPA claim because she does not identify the specific provision of the DTPA under which she is suing.

The Court agrees.

"To prevail on a claim for violation of the Texas Deceptive Trade Practices Act, consumers must establish that each defendant violated a <u>specific</u> <u>provision</u> of the [DTPA], and that the violation was a producing cause of the claimant's injury." <u>Advon Corp. v. Coopwood's</u> <u>Air Conditioning Inc.</u>, 517 F. Supp. 3d 656, 669 (S.D. Tex. 2021) (quoting <u>Amstadt v. U.S.</u> <u>Brass Corp.</u>, 919 S.W.2d 644, 652 (Tex. 1996)) (emphasis added).  And to survive a motion to dismiss, "[t]he pleading standard requires, at a minimum, that [plaintiff] both list the specific violations of the relevant chapters, and specify in what way [defendant] violated them. <u>Am.</u> <u>Surgical Assts., Inc. v. United Healthcare of Tex., Inc.</u>, 2010 WL 1340557, at *3 (S.D. Tex. Mar. 30, 2010).

Here, plaintiff cites to "Texas Business and Commerce Code §§ 17.41–17.63" in a subheading of the complaint.  (Compl. at 8).  This is the entire DTPA.  <u>See</u> DTPA, Tex. Bus. &

Com. Code §§ 17.41–17.63.  Because plaintiff fails to "identify any specific provision of the [DTPA] . . . of which [defendant's] alleged conduct would be in violation," plaintiff's "attempt to make out a deceptive trade practices claim must fail."  Blanks v. Ford Motor Credit, 2005 WL 43981, at *4 (N.D. Tex. Jan. 7, 2005).[4]

Accordingly, plaintiff's DTPA claims must be dismissed.

IV.   Breach of Express and Implied Warranty Claims

Defendant argues plaintiff's claims for breach of express and implied warranties must be dismissed for failure to allege she provided sufficient pre-suit notice.

The Court agrees.

"[I]n order to assert a claim for breach of an express or implied warranty under New York law, a buyer must provide the seller with timely notice of the alleged breach." MacNaughton v. Young Living Essential Oils, LC, 67 F. 4th at 100; N.Y. U.C.C. § 2-607(3)(a). Likewise, "Texas law requires the buyer to notify the seller of the defects in the goods" before "filing suit for breach of either [express or implied] warranty."  Mora v. AngioDynamics, Inc., 2022 WL 16640021, at *3 (S.D. Tex. Sept. 20, 2022) (citing Tex. Bus & Com. Code Ann. § 2.607(c)(1)), report and recommendation adopted, 2022 WL 16636940 (S.D. Tex. Nov. 1, 2022).

Here, plaintiff does not allege she provided defendant with pre-suit notice.  Instead, she contends New York and Texas do not require pre-suit notice, and that she provided defendant with "reasonable notice" by filing this action within a reasonable time after discovering the

---

[4]     Plaintiff also does not address defendant's argument in this regard at all in her opposition. Rather than clarify which sections of the DTPA she seeks to invoke, she again cites to the entire DTPA.  (See Doc. #16 ("Opp.") at 1 ("Plaintiff brings claims for damages for violations of . . . Texas Deceptive Trade Practices – Consumer Protection Act ("DTPA"), Texas Business & Commerce Code §§ 17.41–17.63"); id. at 3 ("Plaintiff also brings claims under DTPA Code §§ 17.41–17.63.")).

breach.  (Opp. at 8).  However, in New York, the pre-suit notice requirement is waived only in cases involving "physical or personal injury as a result of Defendant's alleged breach," neither of which is alleged here.  Budhani v. Monster Energy Co., 527 F. Supp. 3d 667, 685 (S.D.N.Y. 2021).  And plaintiff cites no authority suggesting the pre-suit notice requirement would be waived under Texas law.

As for plaintiff's contention that "filing this action" constitutes sufficient notice (Opp. at 8), this argument has been rejected by Texas courts.  See U.S. Tire-Tech, Inc. v. Boeran, B.V., 110 S.W.3d 194, 202 (Tex. App. 2003) (commencing litigation did not satisfy notice requirement under Texas statute governing breach of warranty claims).  Likewise, courts in this district have consistently recognized "the filing of the complaint cannot possibly serve as 'pre-suit' notice, because the filing of the complaint does not precede the commencement of the lawsuit; it is the commencement of the lawsuit."  Miramontes v. Ralph Lauren Corp., 2023 WL 3293424, at *9 (collecting cases).

Accordingly, plaintiff's claims for breach of express and implied warranties must be dismissed.

V.   MMWA Claim

Defendant argues plaintiff's MMWA claim must be dismissed because plaintiff does not plausibly allege breach of warranty claims under state law.

The Court agrees.

Because plaintiff's warranty claims are dismissed, the MMWA claims must also be dismissed.  Although the MMWA is a federal statute, liability under the MMWA is based on state warranty laws.  See Ebin v. Kangadis Food Inc., 2013 WL 3936193, at *3 n.2 (S.D.N.Y. July 26, 2013) (noting the MMWA "incorporates and federalizes state-law breach of warranty

claims, including state-law standards for liability and damages").  Thus, plaintiff's claim under

the MMWA "stand[s] or fall[s]" with her state-law warranty claims.  See Brady v. Basic Rsch.,

L.L.C., 101 F. Supp. 3d 217, 234 (E.D.N.Y. 2015).

Accordingly, plaintiff's MMWA claim must be dismissed.

VI.    Fraud Claim

Defendant argues plaintiff's fraud claim must be dismissed because plaintiff fails to

allege fraudulent intent.

The Court agrees.

A.    Legal Standard

A claim for fraud under New York law requires a showing of "a misrepresentation . . .

which was false and known to be false by defendant, made for the purpose of inducing the other

party to rely upon it, justifiable reliance of the other party on the misrepresentation or material

omission, and injury."  Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 421 (1996).  In

other words, to state a fraud claim, a plaintiff must allege "a representation of material fact,

falsity, scienter, reliance and injury."  Small v. Lorillard Tobacco Co., 94 N.Y.2d 43, 57 (1999).

"Common law claims for fraud . . . are essentially the same under Texas and New York law."  In

re Enron Corp. Secs., Deriv. & ERISA Litig., 761 F. Supp. 2d 504, 574 (S.D. Tex. 2011).

In federal court, state-law fraud claims are also subject to Federal Rule of Civil Procedure

9(b), which provides that, "[i]n alleging fraud . . . , a party must state with particularity the

circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  However, "[m]alice, intent, knowledge,

and other conditions of a person's mind may be alleged generally."  Id.  That is, to establish

"scienter, conclusory assertions of intent are sufficient if supported by facts giving rise to a

strong inference of fraudulent intent." Aetna Cas. & Sur. Co. v. Aniero Concrete Co., 404 F.3d 566, 579 (2d Cir. 2005) (per curiam).

A "strong inference of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290–91 (2d Cir. 2006).  For example, a plaintiff may establish fraudulent intent by "offer[ing] facts to show that [defendant] had both a clear opportunity and a strong financial motive to" engage in fraud, as well as defendant's actual knowledge of fraud. Wight v. BankAm. Corp., 219 F.3d 79, 92 (2d Cir. 2000).

Conclusory allegations of fraudulent intent, without more, are insufficient to sustain a fraud claim.  See, e.g., Baretto v. Westbrae Nat., Inc., 518 F. Supp. 3d 795, 808 (S.D.N.Y. 2021).  Claims a defendant knew its representations were false, without more, are likewise insufficient.  See Kelly v. Beliv LLC, 2022 WL 16836985, at *10 (S.D.N.Y. Nov. 9, 2022) (collecting cases).

B.    Analysis

Plaintiff's allegations of fraudulent intent are conclusory.  Specifically, plaintiff alleges "[d]efendant knew of the issues described here yet did not address them" (Compl. ¶ 90), and "[d]efendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations."  (Id. ¶ 91).  This is insufficient to establish fraudulent intent.  See, e.g., Brown v. Kerry Inc., 2022 WL 669880, at *6 (S.D.N.Y. Mar. 7, 2022) (dismissing conclusory allegation that defendant's "fraudulent intent is evinced by its failure to accurately describe the Product on the front label, when it knew its statements were neither true nor accurate"); Santiful v. Wegmans Food Mkts., Inc., 2022 WL 268955, at *7 (S.D.N.Y. Jan. 28, 2022) (same).

Nor do plaintiff's factual allegations show defendant possessed either a strong motive to commit fraud or actual knowledge of fraud.

First, plaintiff does not allege a strong motive to commit fraud. Plaintiff alleges "[d]efendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers." (Compl. ¶ 30). Even if the Court inferred from this allegation that defendant possessed a general profit motive to commit fraud, "simply alleging a defendant's self-interested desire to increase sales does not give rise to an inference of fraudulent intent." Colpitts v. Blue Diamond Growers, 527 F. Supp. 3d 562, 586 (S.D.N.Y. 2021). In fact, "[w]hile an ingredients list accurately describing a product's nutritional content does not cure an otherwise deceptive label, it is certainly a substantial barrier to a plaintiff seeking to plead a claim of fraud." Id.

Second, plaintiff does not sufficiently allege actual knowledge of fraud. Plaintiff claims "the records [d]efendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity and deception, through statements and omissions." (Compl. ¶ 89). "Such allegations are manifestly insufficient to satisfy" Rule 9(b). Devey v. Big Lots, Inc., 2022 WL 6827447, at *8 (W.D.N.Y. Oct. 12, 2022) (dismissing fraud claim premised on the same allegations of fraudulent intent).

Accordingly, plaintiff's fraud claim must be dismissed.

VII.   Unjust Enrichment Claim

Defendant argues plaintiff cannot, as a matter of law, plead a claim for unjust enrichment because Texas does not recognize this as an independent cause of action and because it is duplicative of plaintiff's other claims.

The Court agrees it is duplicative under both New York and Texas law.

11

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." In re Mid-Island Hosp., Inc., 276 F.3d 123, 129 (2d Cir. 2002). A plaintiff states an unjust enrichment claim "only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." Corsello v. Verizon N.Y., Inc., 18 N.Y.3d 777, 790 (2012). "An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." Id.

Here, plaintiff's unjust enrichment claim is duplicative of her other claims. In support of her unjust enrichment claim, plaintiff alleges "[d]efendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of [p]laintiff and class members." (Compl. ¶ 92). In other words, plaintiff alleges defendant "committed actionable wrongs" by placing misleading representations on the Product's packaging, and defendant was therefore enriched at plaintiff's expense. See Corsello v. Verizon N.Y., Inc., 18 N.Y.3d at 791. This is the same factual allegation that underlies plaintiff's statutory and tort law claims.

Plaintiff is incorrect that, here, she may plead unjust enrichment in the alternative. This is because plaintiff could not succeed on her unjust enrichment claim and fail on her other claims. See In re Skat Tax Refund Scheme Litig., 356 F. Supp. 3d 300, 325 (S.D.N.Y. 2019) ("A claim is alternative and not duplicative if a plaintiff may fail on one but still prevail on the other."). For this reason, "courts in the Second Circuit have consistently held that unjust enrichment claims are duplicative of GBL claims" in similar cases. Beers v. Mars Wrigley Confectionery US, LLC, 2022 WL 493555, at *7 (S.D.N.Y. Feb. 17, 2022).

As to Texas law, although "Texas appellate courts appear split on whether unjust enrichment is an independent cause of action," In re Connect Transp., L.L.C., 825 F. App'x 150, 154 n.2 (5th Cir. 2020), plaintiff agrees in her opposition that Texas does not recognize unjust enrichment as an independent claim.  (Opp. at 10).  Nevertheless, plaintiff argues her unjust enrichment cause of action "should remain in the event the DTPA provides her with no remedy with which to avoid a potential loss."  (Id. at 11).  But Texas courts have dismissed unjust enrichment claims that are duplicative of other causes of action, such as fraud.  For example, in Berry v. Indianapolis Life Ins. Co., 2011 WL 3555869 (N.D. Tex. Aug. 11, 2011), the court dismissed an unjust enrichment claim as duplicative because "the alleged fraudulent conduct— the same conduct alleged to support the unjust enrichment claim—was not actionable" and thus, the court "held that the unjust enrichment claim rose or fell with the fraud claim" which "had already fallen."  See Berry v. FCA US, LLC, 2022 WL 18671067, at *10 (S.D. Tex. Mar. 25, 2022) (discussing Berry v. Indianapolis Life Ins. Co., 2011 WL 3555869, at *9).  Thus, plaintiff's unjust enrichment claim, based on the same conduct as her fraud claim, likewise fails under Texas law.

Accordingly, plaintiff's unjust enrichment claim must be dismissed.

VIII.   Other States' Consumer Protection Statutes Claims

Defendant argues plaintiff's "multi-state consumer fraud act claims fail because her GBL and DTPA claims are inadequately plead[ed] and because she cannot assert claims for states from which she has no connection."  (Doc. #7 ("Def. Mem.") at 24).

The Court agrees.

 "The doctrine of standing tests whether a prospective litigant may properly invoke the power of the federal courts," but "[c]lass actions under Rule 23 of the Federal Rules of Civil

Procedure are an exception to the general rule that one person cannot litigate injuries on behalf of another." Langan v. Johnson & Johnson Consumer Cos., Inc., 897 F.3d 88, 93 (2d Cir. 2018). The Second Circuit has held "whether a plaintiff can bring a class action under the state laws of multiple states is a question of predominance under Rule 23(b)(3), not a question of standing under Article III." Id. at 96. However, when "the defendant did not actually injure a named plaintiff," "the claims of putative class members are too dissimilar to support standing against a particular defendant." Id. at 94.

Here, plaintiff attempts to assert claims under the Alaska, Idaho, Iowa, Kansas, Kentucky, Montana, Nebraska, North Dakota, South Carolina, Utah, and Virginia consumer protection statutes on behalf of a putative class. However, because plaintiff is a Texas citizen and fails to otherwise "state a claim for the [Product] she actually purchased" in Texas, she has not plausibly alleged she was injured and thus lacks standing to assert claims under the consumer protection statutes of these other states. See Warren v. Coca-Cola Co., 2023 WL 3055196, at *8 n. 10 (S.D.N.Y. Apr. 21, 2023) ("Plaintiff also attempts to raise claims pursuant to the 'State Consumer Fraud Acts' of the states included in her putative multi-state class—namely, Montana, New Mexico, Idaho, South Carolina, Utah, Mississippi, and Alaska. But because all of Plaintiff's claims under New York law fail as a matter of law, she cannot bring claims for products she did not purchase in different states.").

Accordingly, plaintiff's claims under the other states' consumer protection statutes must be dismissed.

IX.   <u>Leave to Amend</u>

In the final line of her opposition, without any elaboration, plaintiff requests that if the Court were to grant the motion to dismiss, plaintiff should be granted leave to file an amended complaint.  (<u>See</u> Opp. at 12).

Although leave to amend should be "freely give[n] . . . when justice so requires," Fed. R. Civ. P. 15(a)(2), requests for leave to amend "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party."  <u>Burch v. Pioneer Credit Recovery, Inc.</u>, 551 F.3d 122, 126 (2d Cir. 2008) (citing <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)); <u>see</u> <u>TechnoMarine SA v. Giftports, Inc.</u>, 758 F.3d 493, 505 (2d Cir. 2014) (leave to amend may be denied when the plaintiff "fails to specify . . . how amendment would cure the pleading deficiencies in its complaint").

By Order dated October 26, 2022, the Court instructed plaintiff to notify the Court whether she intended to file an amended complaint in response to the motion to dismiss, and stated that if plaintiff elected not to file an amended complaint, the Court would be unlikely to grant plaintiff a further opportunity to amend to address the purported deficiencies made apparent by the fully briefed arguments in defendant's motion.  (Doc. #10).  By letter dated November 3, 2022, plaintiff's counsel informed the Court that, "in accordance with the Order of October 26, 2022, Plaintiff intends to rely on the complaint and will file opposition to the motion on or before Monday, November 7, 2022.  ECF No. 10."  (Doc. #13).

Thus, plaintiff elected not to file an amended complaint in response to the motion to dismiss.  Further, plaintiff has not submitted a proposed amended complaint, identified any basis for amendment, specified how an amendment would cure the complaint's pleading

deficiencies, or set forth any additional facts she intends to allege.  And here, the Court

determines that if plaintiff were granted leave to amend, it would unduly delay this action.

Accordingly, leave to amend is denied.

## CONCLUSION

The motion to dismiss is GRANTED.

Plaintiff's request for leave to amend is DENIED.

The Clerk is instructed to terminate the motion (Doc. #7), and close this case.

Dated: June 26, 2023
       White Plains, NY

SO ORDERED:

_____

Vincent L. Briccetti
United States District Judge

16